## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

**DANIEL ANTHONY PEACE**,

                    Plaintiff,

v.                                       **Case No. 14-cv-1590-pp**

**KATHLEEN M. QUINN, et al.**,

                    Defendants.

---

## DECISION AND ORDER DENYING PLAINTIFF'S MOTION TO ALLOW CIRCUIT COURT CASES IN AS EVIDENCE (DKT. NO. 3), DENYING PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 5), GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS* (DKT. NO. 7), DENYING AS MOOT PLAINTIFF'S MOTION FOR USE OF PRISON RELEASE ACCOUNT TO PAY PARTIAL FILING FEE (DKT. NO. 14), DENYING IN PART AND GRANTING IN PART PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT (DKT. NO. 22), DENYING PLAINTIFF'S MOTION IN LIMINE (DKT. NO. 26), DIRECTING THE CLERK TO DOCKET AMENDED COMPLAINT (DKT. NO. 22-2), AND SCREENING AMENDED COMPLAINT

---

The plaintiff, a state prisoner, initially filed a sprawling, 36-page *pro se* complaint under 42 U.S.C. §1983, alleging that over sixty defendants violated his civil rights over a span of almost ten years. Dkt. No. 1. He subsequently filed a motion for leave to file an amended complaint, along with two proposed amended complaints. Dkt. Nos. 22, 22-1 and 22-2. This order resolves the plaintiff's motions for leave to proceed *in forma pauperis*, to allow circuit court cases in as evidence, to appoint counsel, to use his prison release account to pay the initial partial filing fee, for leave to file amended complaint, and his motion *in limine*, as well as screening his amended complaints.

1

## I.    MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS*

Along with his original complaint, the plaintiff filed a Petition and Affidavit to Proceed Without Prepayment of Fees and/or Costs. Dkt. No. 7. The petition states that while the plaintiff has no assets, he does have a prison release account, which at the time had about $260 in it. Id. at 2.

The Prison Litigation Reform Act applies to this action because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. That law allows a court to give an incarcerated plaintiff the ability to proceed with his lawsuit without pre-paying the civil case-filing fee, as long as he meets certain conditions. One of those conditions is a requirement that the plaintiff pay an initial partial filing fee. 28 U.S.C. §1915(b). Once the plaintiff pays the initial partial filing fee, the court may allow the plaintiff to pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On March 2, 2015, the court issued an order requiring the plaintiff to pay an initial partial filing fee of $7.79. Dkt. No. 13. The plaintiff then filed a motion, asking the court to issue an order authorizing the prison to allow him to use his prison release account to pay the partial filing fee. Dkt. No. 14. Before the court ruled on the motion, the court received the $7.79 initial partial filing fee.

Accordingly, the court will deny the plaintiff's motion to use his prison release account to pay the initial partial filing fee as moot. The court will grant the plaintiff's motion for leave to proceed *in forma pauperis*, and will allow the

Case 2:14-cv-01590-PP   Filed 09/24/15   Page 2 of 22   Document 29

plaintiff to pay the balance of the $350 filing fee over time from his prisoner account, as described at the end of this order.

## II. MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

On July 29, 2015, the plaintiff filed a motion for leave to file an amended complaint. Dkt. No. 22. To that motion, the plaintiff attached two amended complaints. This motion complies with Civil Local Rule 15, and "the court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The court will grant the plaintiff's motion to amend.

The court notes that because the plaintiff filed *two* proposed amended complaints, he created the potential for confusion—which complaint did he wish the court and the defendants to use as the operative complaint? The motion states, however, that the plaintiff had learned that he could proceed only on claims which occurred within the six-year period prior to the filing date, and that he'd named in the original complaint some individuals who'd allegedly committed violations more than six years before the filing date. The motion asked the court to allow the plaintiff to amend his complaint to name only those individuals whose alleged violations were not barred by the six-year statute of limitations. Id. He named in the first proposed amended complaint approximately twenty-two (by the court's count—it is a bit difficult to tell where the plaintiff inserted commas) defendants who allegedly committed acts between February 2005 and October 2008. Dkt. No. 22-1 at 1-8. He named in the second proposed amended complaint thirty-nine defendants who allegedly committed violations between March 2009 and December 15, 2014. Dkt. No.

3

22-2 at 1-9. He appears to have put claims he believed might be time-barred in the first proposed amended complaint, and claims he believed were not time-barred into the second.

Section 1983 does not have a statute of limitations provision, "so federal courts adopt the forum state's statute of limitations for personal injury claims." Johnson v. Rivera, 272 F.3d 519, 521 (7th Cir. 2001). Wisconsin federal courts use Wisconsin's personal rights statute of limitations, Wis. Stat. §893.53—the residual statute for personal-injury actions—in §1983 actions. Malone v. Corr. Corp. of Am., 553 F.3d 540, 542 (7th Cir. 2009). Section 893.53 requires that actions must be commenced "within 6 years after the cause of action accrues . . . ." "If the allegations of the complaint 'show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim.'" Limestone Dev. Corp. v. Vill. of Lemont, Ill., 520 F.3d 797, 802 (7th Cir. 2008) (quoting Jones v. Bock, 549 U.S. 199, 215 (2007)). Statutes of limitation, however, are tolled while a plaintiff exhausts administrative remedies. See Johnson v. Rivera, 272 F.3d 519, 521–22 (7th Cir. 2001); Wis. Stat. §893.23.

The plaintiff's first proposed amended complaint includes incidents that occurred between February 11, 2005 and October 9, 2008. Dkt. No. 22-1 at 2-8. Six years from the last violation referenced in the first proposed amended complaint was October 9, 2014. The plaintiff did not file his original complaint until December 22, 2014. Dkt. No. 1.

There are several groups of allegations in the first proposed amended complaint, levied against various police officers, prosecutors, defense attorneys, clerks of court, prison social workers and prison staff. The plaintiff alleges that the police officers and prosecutors charged and prosecuted the plaintiff for an offense he did not commit and withheld exculpatory information. He alleges that various defense attorneys failed to properly defend him. He alleges that after he was sentenced, various institution social workers and other institution personnel relied on improper information and misclassified his risk level.

Fed. R. Civ. P. 18(a) states that "[a] party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 20(a)(2) states that a plaintiff may join multiple defendants in one action if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action." In interpreting Rule 18 in the context of suits brought by inmates, the Seventh Circuit has held that "[u]nrelated claims against different defendants belong in different suits," so as to prevent prisoners from dodging the fee payment or three-strikes provisions in the Prison Litigation Reform Act. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). "[M]ultiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." Id. The George court also held that Rule 20 applies as much to prisoner cases as it does to any other case. Id.

The first proposed amended complaint violates Rules 18 and 20, because it advances unrelated claims against multiple defendants at two separate prisons. The <u>George</u> court instructed that such "buckshot complaints" should be "rejected." <u>Id.</u>

The plaintiff's first proposed amended complaint provides an example of one of the many problems with such "buckshot" complaints. The plaintiff's claims against the police officers, prosecutors, defense attorneys, and clerks of court span the time period between February 11, 2005 and December 15, 2007. Dkt. No. 22-1 at 2-5. Because these particular claims do not involve prison officials, the plaintiff did not have any "administrative remedies" to exhaust with regard to the claims, and thus there was nothing to toll the statute of limitations with regard to these claims. The last incident relating to these claims took place on December 15, 2007, over six years from the date the plaintiff filed his complaint. As a result, the claims against the following defendants are time-barred: Kathleen M. Quinn, Basil Loeb, Stephen Sargent, K. Thompson,[1] Jody Young, Kenneth R. Berg, Gale Shelton, Jeffrey Greipp,

---

[1] The plaintiff sued K. Thompson only because she was defendant Sargent's supervisor. Dkt. No. 22-1 at 8. He does not allege that she was personally involved in any alleged violations. The doctrine of *respondeat superior* (supervisory liability) does not apply to actions filed under 42 U.S.C. §1983. <u>See</u> <u>Pacelli v. deVito</u>, 972 F.2d 871, 877 (7th Cir. 1992) ("Section 1983 does not create collective or vicarious responsibility. Supervisors are not liable for the errors of their subordinates."). "The 'should have known' theory . . . is both legally deficient and inconsistent with the demands of effective administration." <u>Id.</u> Thus, the court would dismiss K. Thompson as a defendant even if the claim against her were not time-barred.

6

Katharine Kucharski, James Frish, District Attorney John Doe No. 4,[2] Lt./Sgt. John Doe 3,[3] and Sally S.

The incidents giving rise to the plaintiff's claims against various jail and prison officials—which are unrelated to the claims against law enforcement officers, lawyers and clerks of court—began on August 28, 2007, and continued through October 9, 2008. Id. at 6-8. These claims, too, accrued more than six years prior to the date on which the plaintiff filed his complaint. But because these claims are made against prison officials, the plaintiff was required to exhaust administrative remedies on these claims. As indicated above, the time during which a plaintiff is exhausting administrative remedies tolls the statute of limitations.

The court cannot tell from the first proposed amended complaint whether the plaintiff exhausted his administrative remedies against these defendants, or during what time period he may have done so. It is not clear, therefore, whether the claims against T. Waldera, Carson, S. Vansplunder, S. Dougherty, T. Burlingame, RMF, MKH, A. Hansen, Warden John Doe 7, Warden John Doe 6, and John Doe 8 are time-barred.

The first proposed amended complaint also lists in its body (though not in its caption) "Pollard" and "Pugh." Id. at 10. The plaintiff does not explain who "Pollard" and "Pugh" are, or make any allegations against them. Accordingly,

---

[2] Again, the plaintiff sued this prosecutor only because he or she was a supervisor; the court would dismiss this defendant even if the claim were not time-barred.

[3] The court would dismiss this supervisor regardless of the statute of limitations, for the reasons discussed in n.1. Supra.

the first proposed amended complaint states no claim against these defendants, time-barred or otherwise.

Because the first proposed amended complaint violates Rules 18 and 20, because it contains time-barred claims against a number of defendants, because the court cannot tell whether the claims against other defendants are time-barred, because it makes only *respondeat superior* claims against some defendants, and because it makes no claims at all against two defendants, the court will deny the plaintiff's motion for leave to file the first proposed amended complaint. Dkt. No. 22-1.

Accordingly, the court will grant the plaintiff's motion to amend the complaint with the second proposed amended complaint, and will screen that amended complaint. Dkt. No. 22-2.

## III.    SCREENING OF PLAINTIFF'S AMENDED COMPLAINT

### A.    Standard for Screening Complaints

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint or portion thereof if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

A claim is legally frivolous "'when it lacks an arguable basis either in law or in fact.'" <u>Denton v. Hernandez</u>, 504 U.S. 25, 31 (1992) (quoting <u>Neitzke v.</u>

Williams, 490 U.S. 319, 325 (1989)). The court may, therefore, dismiss a claim as frivolous where it is "based on an indisputably meritless legal theory" or where the factual contentions are clearly "baseless." Neitzke, 490 U.S. at 327. "Malicious," although "sometimes treated as a synonym for 'frivolous,' . . . is more usefully construed as intended to harass." Lindell v. McCallum, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (internal citations omitted).

To state a cognizable claim under the federal notice pleading system, the plaintiff must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). A plaintiff does not need to plead specific facts, and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Id. (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, courts follow the principles set forth in Twombly. First, they must "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. A plaintiff must support legal conclusions with factual allegations. Id. Second, if there are well-pleaded factual allegations, courts must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that the defendants: 1) deprived him of a right secured by the Constitution or laws of the United States; and 2) acted under color of state law. Buchanan-Moore v. Cnty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

B.    Facts Alleged in the Amended Complaint

The plaintiff's amended complaint is eighteen pages long, and names thirty-nine defendants in their individual and official capacities. The complaint starts out with the following background section:

> The petitioner will show the following facts demonstrate how the Defendants were in complicity to retaliate on the petitioner. The police department file a criminal complaint against the petitioner, after another individual confess to doing the same allege violations of law against the same person, the district attorney

10

office withheld this information from the petitioner, eventually the petitioner was given a plea for a non-related act, the district attorney office denied the petitioner his full plea agreement, the district attorney office did not amend criminal complaint he was never convicted of, by holding defective custody level hearings, in the community, denying him places where he could live, and people he could be around, making him attend high risk SO-1 program, then eventually max discharging him for his community probation time of 5 years and 4 days, because he wrote a written complaint to his Agent, when he enter back into the department of corrections, they hold more defective custody level hearings, and deny him work release, then used criminal complaint to elevate his custody level (hearings) as part of unrelated pending charges [sic].

Dkt. No. 22-2 at 1-2.[4] The complaint then turns to numbered paragraphs for the plaintiff's factual allegations.

The plaintiff began extended supervision on March 3, 2009. Dkt. No. 22-2 at 2. Defendant Agent Amy Lampone imposed a number of rules of supervision the plaintiff believes were based on the original criminal complaint against the plaintiff, even though he had pled guilty to a lesser charge. For example, the plaintiff was required to stay in a high-risk, sex-offender temporary living placement and wear a tracking bracelet. He also was required to register as a sex offender and had to do a high-risk SO-1 program. These restrictions led to problems with the plaintiff's landlord and a potential girlfriend. Id. at 2.

---

[4] Many of the events mentioned in this background section relate to the claims from the plaintiff's first proposed amended complaint, many of which are time-barred. Nevertheless, they provide insight into the plaintiff's concerns about his criminal case and how he believes events in those proceedings led to harsher rules of supervision, higher security classifications, and less desirable placements.

11

The plaintiff told Agent Lampone that he was having nightmares due to what some of the men said in the SO-1 program. Agent Lampone asked if he was having these dreams because what those men did was different from what he had done. The plaintiff insisted that all he had done was masturbate. Agent Lampone called him a "master manipulator" and told him he needed to take responsibility for what he did. Id. at 2-3.

The plaintiff was assigned a new agent, Defendant Kloss. Id. at 3. He explained to Agent Kloss that all he did was masturbate in a bathroom and said that he did not understand why he was in a high risk SO-1 program and on a bracelet. She told the plaintiff, "give me a few weeks to get to know you," but she quit the following week. The plaintiff then was assigned to defendant D. Cupps. Id. at 3.

The plaintiff "end[ed] up getting lock[ed] up" on October 31, 2009, but he does not explain what led to him being taken into custody. Dkt. No. 1 at 3. After he was taken into custody but before his reincarceration hearing, the plaintiff wrote to Agent Cupps and complained about Agent Lampone. In his letter to Agent Cupps, the plaintiff stated that he believed Agent Lampone was part of the reason he was locked up, and that Lampone was punishing him for the allegations in the criminal complaint he was never found guilty of. The plaintiff included Agent Lampone's work address and home address in the letter. Id.

Agent Cupps and defendant John Doe 9, the hearing officer, were present at the plaintiff's reincarceration hearing. Id. The plaintiff explained that he was

not guilty of possessing sexually explicit materials or a cell phone. (The plaintiff does not specify, but these may have been the charges before the hearing officer at that time.) According to the plaintiff, the hearing officer said the plaintiff was not guilty of either charge due to lack of evidence. Id.

Agent Cupps then said "hold up," and pulled out the letter where the plaintiff complained about Agent Lampone. The hearing officer asked what he was supposed to do with the letter, and instructed Cupps to show it to her supervisor. Cupps said the supervisor told her to bring it to the hearing. Id.

The hearing officer asked the plaintiff if there was anything else the plaintiff wanted to say, and how much time he thought he should get. Id. The plaintiff asked why he was in a high-risk, sex-offender program if he was not a registered sex offender, and said he did not know how much time he should get. Id. The hearing officer asked Cupps to get someone to escort the plaintiff back to his unit, and Cupps said, "whatever happens Mr. Peace you have a good life." Id. at 4.

When the plaintiff received his reincarceration paperwork, it did not state what violations the plaintiff was found guilty of—he says he did not find out until he got to Dodge Correctional Institution. Id. at 4. The plaintiff does not describe the charges in his second amended complaint.

The complaint then turns to the plaintiff's time in prison, and describes a number of social workers he talked to about the discrepancy between the offense with which he was charged (first-degree sexual assault of a child), and what he claims he actually did (masturbate in a bathroom, during which a

child walked in on him). The plaintiff repeatedly told social workers about this issue, but the social workers and other staff continued to rely on the incorrect information, and the Program Review Commission (PRC) continued to rely (at least in part) on the criminal complaint to determine the plaintiff's security classification and placement. Id. at 4-9. The plaintiff attempted to have the criminal complaint amended, id. at 7; he does not indicate whether this attempt was successful, but the court assumes it was not. The plaintiff alleges that as a result of the various prison defendants relying on the charges in the complaint, and not heeding the information he provided him, he was elevated from minimum to maximum security custody. Id. at 8.

    C.    <u>Legal Analysis of Alleged Facts</u>

Nowhere in the eighteen-page amended complaint does the plaintiff mention any articles or sections of the Constitution. He does not specifically enumerate any civil rights which he claims the defendants violated. The court has done its best to draw conclusions about what constitutional rights the plaintiff's claims implicate.

The court will first address the claims regarding the PRC and the information it considered when it decided the plaintiff's placement and classification. The plaintiff brings similar claims against the social workers to whom the plaintiff appealed to change the information provided to the PRC. The court concludes that the plaintiff is attempting to assert Fourteenth Amendment due process claims against these defendants. The court will not

allow the plaintiff to proceed on claims against any of these defendants, because he has no liberty interest in his security classification or placement.

"In order for the due process clause to be applicable, there must be a protected liberty interest created by state law or regulation." Kincaid v. Duckworth, 689 F.2d 702, 704 (7th Cir. 1982) (citing Meachum v. Fano, 427 U.S. 215, 223-24 (1976)). However, not every "change in the conditions of confinement having a substantial adverse impact on the prisoner involved is sufficient to invoke the protections of the Due Process Clause." Meachum, 427 U.S. at 224. Nor "does the Due Process Clause in and of itself protect a duly convicted prisoner against transfer from one institution to another within the state prison system." Id. at 225.

The Supreme Court has expressed the view, in several cases, that "federal courts ought to afford appropriate deference and flexibility to state [prison] officials trying to manage a volatile environment." Sandin v. Conner, 515 U.S. 472, 482 (1995). "Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and to maintain institutional security." Mathews v. Fairman, 779 F.2d 409, 412 (7th Cir. 1985) (quoting Bell v. Wolfish, 441 U.S. 520, 547 (1979). Thus, the court has held that "'it is plain that the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence,' and thus does not implicate a prisoner's liberty interest under the Due Process Clause." Id. at 413

15

(quoting <u>Hewitt v. Helms</u>, 459 U.S. 460, 468 (1983). And "a prisoner may be transferred from one state prison to another without implicating the inmate's liberty interest—even where the conditions of the destination prison are 'much more disagreeable' than those of the originating prison." <u>Lekas v. Briley</u>, 405 F.3d 602, 609-10 (7th Cir. 2005) (quoting <u>Meachum</u>, 427 U.S. at 225).

Because the plaintiff does not have a liberty interest in being placed in less restrictive conditions, the court finds that, to the extent that the plaintiff intended to bring any due process claims against the social workers and PRC members he names in the complaint, the court ``will not allow him to proceed on such claims.

Next, the court turns to the plaintiff's claims regarding his extended supervision rules, his parole agents, and his revocation proceedings. The plaintiff's rules of supervision are part of his sentence, and he may not challenge them without showing that his conviction has been reversed, expunged, or otherwise declared invalid. <u>See</u> <u>Savickas v. Walker</u>, 180 F. App'x 592, 593-94 (7th Cir. 2006); <u>Heck v. Humphry</u>, 512 U.S. 477, 486-87 (1994). Any challenge to parole rules or restrictions must be presented as a collateral attack in a petition for a writ of habeas corpus. This is because parole restrictions "define the perimeters of [] confinement" for someone on supervision. <u>Williams v. Wisconsin</u>, 336 F.3d 576, 580 (7th Cir. 2003) (quoting <u>Drollinger v. Milligan</u>, 552 F.2d 1220, 1224-25 (7th Cir. 1977)). "Thus, eliminating or changing one of the restrictions would alter the confinement." <u>Williams</u>, 336 F.3d at 580. "[F]iguratively speaking, one of the 'bars' would be

16

removed from [his] cell." Drollinger, 552 F.2d at 1225. To the extent the plaintiff is challenging his rules of supervision or the revocation of his parole based on those rules, the court will not allow him to proceed on those claims.

Finally, the court considers the only legal theory the plaintiff explicitly mentions: retaliation. To state a retaliation claim under the First Amendment, the plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the [d]efendants' decision to take the retaliatory action." Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009) (internal quotations omitted).

The plaintiff makes broad allegations of retaliation in the background section of his complaint, but the only activity he specifically describes that could be protected by the First Amendment is the letter he wrote to Agent Cupps about Agent Lampone. Dkt. No. 22-2 at 3. The plaintiff wrote the letter after he was reincarcerated. Given that time frame, the reincarceration itself could not have been retaliatory. That leaves only the actions taken by Cupps and John Doe 9 at the reincarceration hearing as potential retaliatory actions.

The plaintiff sued Cupps in her individual capacity. The complaint states:

> She was involved in punishing the plaintiff for criminal complaint he was not convicted of, and helped with punishing the plaintiff for complaint he wrote her about another Agent. She could have intervened on the plaintiff's behalf, contact the courts to see what his factual basis to his conviction are. She decided to make a malicious and vindictive against the plaintiff's

17

future. She could have prevented any further harm or
judicial injustice.

Id. at 15.

With regard to John Doe 9, the Hearing officer, the plaintiff also sued her
in her individual capacity. The plaintiff alleges:

> She allowed a complaint the petitioner wrote about an
> Agent, into his reincarceration hearing. Used this
> complaint to make a malicious decision on the
> plaintiff's future, which also allowed violations the
> plaintiff was not found guilty of, be turn over to the
> Department of Corrections. She could have prevented
> any further harm or judicial injustice.

Id. at 17.

The hearing officer found the plaintiff guilty at his reincarceration
hearing, but the plaintiff does not tell the court what he was found guilty of.[5]
Nor does the plaintiff allege that the hearing procedures were faulty, or suggest
that the hearing officer made any erroneous legal determinations. The plaintiff
alleges that after the hearing officer had made the determination that the
plaintiff was not guilty of possessing sexually explicit materials or possessing a
cell phone, Agent Cupps showed the hearing officer the letter complaining
about Agent Lampone. Id. at 3. There is no indication that this letter was a
motivating factor in the hearing officer's decision, or that it impacted his

---

[5] The court notes that in Milwaukee County Circuit Court Case No.
2009CF005183, filed November 11, 2009, the plaintiff was found guilty of
possession with intent to distribute THC, a class I felony. See Wisconsin Circuit
Court Access, http://wcca.wicourts.gov (Agree to terms, search for Daniel A.
Peace). This criminal case, filed less than two weeks after the plaintiff was
taken into custody, suggests that it was not solely a violation of his rules of
supervision (or his previous criminal complaint) that resulted in the plaintiff's
reincarceration.

18

decision in any way. The plaintiff simply draws the conclusion that, because the hearing officer saw the letter, and because the hearing officer found him guilty of violations (again, the plaintiff does not say what those violations were), the hearing officer must have found him guilty as a way to retaliate against him for writing the letter. This unsupported conclusion is not sufficient for the court to allow the plaintiff to proceed on a retaliation claim based on the letter he wrote complaining about Agent Lampone. See Bridges, 557 F.3d at 546.

To the extent the plaintiff suggests that the letter he wrote about Agent Lampone contributed to the decisions of social workers or PRC members once the plaintiff was back in prison, the complaint contains no facts that support such a conclusion. There is no allegation that the social workers or PRC members even knew about the letter, let alone that it was a motivating factor in the decisions made by the social workers or PRC members. See id.

For all of the above reasons, the court finds that the plaintiff has not stated facts that would support possible claims that any of the defendants the plaintiff has sued violated his constitutional rights. There are other defects with the plaintiff's second proposed amended complaint. He names some defendants solely because they were supervisors, but "[t]he doctrine of *respondeat superior* (supervisory liability) does not apply to actions filed under 42 U.S.C. §1983." See Pacelli v. deVito, 972 F.2d 871, 877 (7th Cir. 1992). He names as defendants people who were not personally involved in any of the actions he alleges, but §1983 defendants are responsible for "for their own misdeeds but not for anyone else's." Burks v. Raemisch, 555 F.3d 592, 596 (7th Cir. 2009).

Section 1983 "creates a cause of action based on personal liability and predicated upon fault; thus liability does not attach unless the individual defendant caused or participated in a constitutional violation." Vance v. Peters, 97 F.3d 987, 991 (7th Cir. 1996) (quoting the "long-settled" rule stated in Sheik-Abdi v. McClellan, 37 F.3d 1240, 1248 (7th Cir. 1994)).

Accordingly, the court will dismiss the plaintiff's second amended complaint for failure to state a claim.

## IV. PLAINTIFF'S OTHER MOTIONS

Because the court is dismissing the plaintiff's amended compliant, his other motions are moot. These include the plaintiff's motion to allow circuit court cases in as evidence (Dkt. No. 3), the plaintiff's motion to appoint counsel (Dkt. No. 5), and the plaintiff's motion *in limine* (Dkt. No. 26).[6]

## V. CONCLUSION

The court **GRANTS** the plaintiff's motion for leave to proceed *in forma pauperis* (Dkt. No. 7). The court **DENIES AS MOOT** the plaintiff's motion for use of his prison release account to pay his initial partial filing fee (Dkt. No. 14). The court **ORDERS** the Secretary of the Wisconsin Department of Corrections or his designee to collect from the plaintiff's prison trust account the $342.21 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding

---

[6] The motion *in limine* asks the court to suppress the descriptions of the charges of which he was convicted, and to suppress a particular conduct report. Dkt. No. 26.

Case 2:14-cv-01590-PP   Filed 09/24/15   Page 20 of 22   Document 29

payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The Secretary or his designee shall clearly identify the payments by the case name and number.

The court **DENIES** the plaintiff's motion for leave to amend the complaint, to the extent that he wishes to file the first proposed amended complaint (Dkt. No. 22-1). The court **GRANTS** the plaintiff's motion for leave to file an amended complaint to the extent that he wishes to file the second proposed amended complaint (Dkt. No. 22). The court **DIRECTS** the clerk of court to file the second proposed amended complaint (Dkt. No. 22-2) as the "Amended Complaint."

The court **DISMISSES** the amended complaint—and thus **DISMISSES** this case—pursuant to 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) for failure to state a claim. The clerk of court shall enter judgment accordingly. The clerk of court also shall document that this plaintiff has brought an action that was dismissed for failure to state a claim under 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1), and that this plaintiff has incurred a "strike" under 28 U.S.C. §1915(g).

The court **DENIES AS MOOT** the plaintiff's motion to allow circuit court cases in as evidence (Dkt. No. 3), the plaintiff's motion to appoint counsel (Dkt. No. 5), and the plaintiff's motion *in limine* (Dkt. No. 26).

**I FURTHER CERTIFY** that any appeal from this matter would not be taken in good faith pursuant to 28 U.S.C. §1915(a)(3) unless the plaintiff offers bona fide arguments supporting his appeal.

The court will send a copy of this order to the warden of the institution where the inmate is confined.

Dated at Milwaukee this 24th day of September, 2015.

BY THE COURT:

HON. PAMELA PEPPER
United States District Judge